754 A.2d 1132

Lisa Diane BRICE

v.

Larry James BRICE, et ux.

No. 1987, Sept. Term, 1999.

Court of Special Appeals of Maryland.

July 5, 2000.

M. Lynn Williams (Karen L. Smith, Barton & Williams, P.A., Roger Schlossberg and Schlossberg & Associates, on the brief), Hagerstown, for appellant.

No brief or appearance by appellees' counsel.

Argued before WENNER, SONNER and ADKINS, JJ.

SONNER, Judge.

Appellant, Lisa Brice ("Lisa"), brings this appeal from an Order of the Circuit Court for Washington County granting visitation to the grandparents of Lisa's minor child, Kayla Brice. On appeal, Lisa raises three issues:

1. Did the trial court err by denying appellant's Motion to Dismiss or for Summary Judgment based on the unconstitutionality of § 9–102 of the Family Law Article?

2. Did the trial court err by awarding visitation to appellees after granting appellant's Motion for Judgment?

3. Did the trial court err by granting visitation *pendente lite* after the hearing on exceptions to the Master's findings and recommendations?

Based on the United States Supreme Court's recent decision in *Troxel v. Granville,* —— U.S. ——, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), we hold that the application of the Maryland Code, Family Law § 9–102 unconstitutionally violated Lisa's due process rights. Therefore, we reverse the judgment of the lower court.

Kayla Brice was born on January 8, 1997, and is the only child of Lisa and James Brice. James died in an automobile accident on October 2, 1997. Shortly after James's death, Susan Brice, James's mother, was on psychiatric leave from her employment[1] and asked Lisa if she could provide daycare for Kayla, which Lisa declined. On November 5, 1997, James's parents, Larry and Susan Brice ("the Brices"), appellees, and Susan Brice's mother, Dorothy Long, filed Civil Complaints in the Magistrate Court of Berkley County, West Virginia, alleging that Lisa would not return their property.[2] On December 9, 1997, the Brices filed a Complaint to Establish Grandparent Visitation Rights, alleging that Lisa denied them visitation with Kayla since James's death. Lisa's Answer to the Complaint denied that she had refused the Brices visitation with Kayla, and stated that she "has continually encouraged reasonable and appropriate visitation by the [Brices] with their granddaughter, Kayla...."

At the hearing before a Family Law Master on June 1, 1998, Susan testified that from the time of James's death on October 2, 1997, until the end of 1997, she "would get to see

---

1. Prior to James's death, Susan had been under psychiatric care and took medications for severe depression. After James's death, Susan was on psychiatric leave from her employment as a Claims Assistant for State Farm Insurance for approximately six months. Susan's psychiatrist wrote Lisa a letter, dated October 21, 1997, which stated, in pertinent part:

   Currently, I do not have any concerns about Susan's ability to responsibly and solely care for Kayla. The medications that she is presently taking have not adversely affected her mental abilities. She is using sound and logical reason and judgment. Susan's contact with Kayla would most likely improve her emotional state.

2. The parties reached an agreement and the cases were dismissed in August 1998.

[Kayla] maybe once a week for a little bit but after that it was less and less." She further testified that a visitation schedule was set up in January 1998 that allowed the Brices to see Kayla every other Wednesday from 6:00 p.m. to 8:00 p.m. and every other Sunday from 1:00 p.m. to 4:00 p.m.[3]  However, Susan testified that this was not enough time and that she would like to see Kayla "every week ... at least for a few hours" and "maybe a weekend visit now and then" so that the Brices could take Kayla up to their cabin over a hundred miles away in Western Maryland.  Susan also testified that, during the visits, as long as Kayla could see her mother, she would fuss and cry to be with her mother.  Lisa testified that she told the Brices they could visit Kayla anytime and has never denied them the right to see Kayla.  She testified that she wanted to be present during the visits because Kayla was experiencing separation anxiety, "crying when Susan takes her out the door," and sleeping restlessly after the visits.  Lisa also testified that she is not comfortable with Kayla spending the night with someone other than herself, that she has a "very strained" relationship with the Brices, and that she learned the Brices might file a grandparent visitation suit against her just four days after James's funeral.  She stated that she did not believe it was in Kayla's best interest for there to be court-ordered visitation and that she was willing to continue visitation without a court order.

> At the conclusion of the hearing, the Master recommended: Visitation every other Sunday from 1 p.m. to 4 p.m. in [the] presence of [Lisa]. Review if requested by parties no sooner than 6 months.  No smoking in proximity of child.

Both parties filed exceptions to the recommendations.  In addition, Lisa filed a Motion to Dismiss or for Summary Judgment, arguing that § 9–102 of the Family Law Article, the grandparent visitation statute, is facially unconstitutional as an unwarranted infringement of her rights under the Ninth and Fourteenth Amendments to the United States Constitu-

---

**3.**  Larry Brice testified that, because of his work schedule, he could see Kayla only every other weekend for three or four hours.

tion and the Maryland Declaration of Rights. Specifically, she argued that the statute unconstitutionally permits visitation to be awarded absent a showing of potential harm to the child and absent a denial of visitation.

The court held a hearing on the exceptions on August 21, 1998, granted visitation as outlined by the Master, and ordered the parties to participate in mediation.

The court held a trial on the merits on September 17, 1999, granted Lisa's Motion for Judgment, and found that the Brices:

> failed to meet their burden of producing affirmative evidence that the schedule of visitation proposed would be detrimental to the interests of the child, which is the Court's only focus in a case such as this. So the Court will adopt the schedule of visitation proposed by the mother and grant the motion for judgment. The schedule will be, once again, alternating Sundays for three hours, with Lisa slowly removing herself from the location of visitation; two or three times per month, as agreed upon by the parties, in addition, including the Plaintiffs and the holiday plans of the child, as agreed upon by the parties for grandparental contact and access; reasonable telephone contact; and exchanging information with the grandparents relating to the child's activities, to allow the grandparents to attend those activities.

The court asked Lisa's counsel to prepare an Order, and counsel submitted an Order dismissing the Brices' Complaint. Instead of entering the proposed Order dismissing the Complaint, the court issued an Order "establish[ing] a schedule of visitation proposed by [Lisa]" as set forth above.[4] This appeal followed.

---

4. The Order of Court stated, in its entirety:

> On September 17, 1999, this Court conducted a hearing in which it was determined that the grandparents, the plaintiffs herein, have not overcome the presumption that the schedule of visitation proposed by the defendant, Lisa Brice, the natural mother of the subject minor child, is in the best interest and welfare of said minor child. Accordingly, this Court granted a motion for judgment at the end of the plaintiff's case and established a schedule of visitation proposed by

We find that this case falls squarely under the Supreme Court's decision in *Troxel v. Granville*. In *Troxel*, Tommie Granville and Brad Troxel had two daughters. In May 1993, Brad committed suicide. In December 1993, Brad's parents, Jenifer and Gary Troxel, petitioned the Washington Superior Court for Skagit County for the right to visit their two granddaughters, pursuant to § 26.10.160(3) of the Revised Code of Washington, which stated:

Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

The Troxels requested two weekends of overnight visitation per month and two weeks of visitation during the summers. Granville did not oppose visitation and conceded that grandparent visitation was in the best interests of the children, but, instead, asked the court to order one day of visitation per month with no overnight stay. The Superior Court granted the Troxels visitation one weekend per month, one week

---

the defendant as that visitation most appropriate and in the best interest and welfare of the minor child, namely Kayla Diane Brice. As a result, it is hereby

ORDERED ... that the plaintiff[s] be and hereby are awarded grandparental visitation rights for three hours on alternate Sundays. Initially, during the scheduled visitation, the defendant shall be present within eyesight and earshot of the visitation as it is taking place. The defendant, however, shall slowly begin to remove herself from the area in which visitation rights are being conducted; it is further

ORDERED that two to three times each month, additional visitation shall be provided to the grandparents, the plaintiffs herein, as agreed upon by the parties; it is further

ORDERED that the parties shall communicate in order to attempt to include the plaintiffs in any holiday plans for the minor child in order to provide access to the grandparents for contact for the minor child; it is further

ORDERED that the defendant shall provide the plaintiffs reasonable telephone contact with the minor child; and it is further

ORDERED that the defendant shall keep the plaintiffs reasonably apprised [sic] of the minor child's activities in order to allow the grandparents, if they so desire, to attend their grandchild's social and extracurricular functions.

during the summer, and four hours on the Troxels' birthdays. Granville appealed to the Washington Court of Appeals, which reversed the lower court's decision and dismissed the petition, holding that the Troxels lacked standing. The Troxels appealed to the Washington Supreme Court, which held that, although the Troxels had standing to seek visitation, § 26.10.160(3) of the Revised Code of Washington was unconstitutional on two grounds. First, the statute failed to require a showing of harm or potential harm to the child, which is required before the State can interfere with parents' rights to rear their children. Second, the statute was too broad.

The United States Supreme Court affirmed the Washington Supreme Court's decision based on the "sweeping breadth of [Washington's statute] and the application of that broad, unlimited power in this case." Describing the parental rights at issue in this case as the "oldest of the fundamental liberty interests recognized by this Court," the Court held that Washington's statute, as applied to Granville and her family, unconstitutionally violated her due process right to make decisions concerning the care, custody, and control of her daughters. The Court emphasized that the Troxels did not allege, and no court found, that Granville was an unfit parent. Therefore, Granville was entitled to the presumption that she acted in the best interests of her children. In addition, the Court noted that Granville did not oppose visitation altogether.

The Supreme Court's decision did not decide whether a showing of harm or potential harm to the child was required prior to granting visitation, did not define the "precise scope" of parental due process rights, and did not hold that the Washington statute violated the Due Process Clause *per se.* Rather, the majority of the Court recognized that "much state-court adjudication in this context occurs on a case-by-case basis" and agreed with Justice Kennedy "that the constitutionality of any standard for awarding visitation *turns on the specific manner in which that standard is applied.*" (Emphasis added.)

The statute at issue in this case is Maryland Code, Family Law § 9–102, which states:

An equity court may:

(1) consider a petition for reasonable visitation of a grandchild by a grandparent; and

(2) if the court finds it to be in the best interests of the child, grant visitation rights to the grandparent.

MD.CODE (1999 Repl.Vol.), FAM. LAW § 9–102. Although Lisa argues that Maryland's statute is facially unconstitutional, we hold only that the statute was unconstitutionally applied to the facts in this case, which are strikingly similar to those in *Troxel.* As in *Troxel,* the Brices did not allege, and no court has found, that Lisa was an unfit parent. In addition, as in *Troxel,* Lisa did not oppose or deny visitation [5] and conceded that it was in Kayla's best interest to have contact with the Brices.

However, there are differences between the cases. First, the Washington statute allows "any person" to petition for visitation rights, whereas the Maryland statute allows only grandparents to petition for visitation rights. This difference between the statutes does not alter our analysis because, even though the Maryland statute is narrower than Washington's "breathtakingly broad" statute, the Supreme Court's holding in *Troxel* was not decided on the fact that "any person" could petition for visitation, but, rather, was decided on *grandparents* seeking visitation rights. Second, Lisa opposed any court-ordered visitation, whereas Granville sought a lesser amount of visitation than the Troxels. This factor also does not change our analysis because the lower court granted the

---

**5.** Although the Brices' Complaint alleged that Lisa denied them visitation with Kayla since James's death, Susan Brice's testimony at the hearing before the Master conceded that she had seen Kayla after James's death "maybe once a week for a little bit but after that it was less and less." The Brices filed their Complaint less than two months after James's death and Lisa learned of a possible grandparent visitation suit four days after James's funeral. Under these circumstances, we find no merit to the Brices' contention that they were denied visitation.

Brices visitation based on Lisa's alleged proposed visitation schedule. As this Court noted in a footnote in *Wolinski v. Browneller*, 115 Md.App. 285, 307–08 n. 10, 693 A.2d 30 (1997), "the investiture of visitation rights would seem to intrude somewhat *more* severely upon parental autonomy than does setting a schedule of visitation." (Emphasis added). Therefore, neither of these differences alters our opinion that the Supreme Court's decision in *Troxel* controls this case. Accordingly, the judgment of the lower court is reversed.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY WITH DIRECTIONS TO ENTER JUDGMENT FOR APPELLANT.**

**COSTS TO BE PAID BY APPELLEES.**