835 So.2d 174 (2001)
J.S. and E.S.
v.
D.W. and J.W.
2990431.
Court of Civil Appeals of Alabama.
May 4, 2001.
*176 John M. Wood and Michael A. Anderson of Wood & Shaw, L.L.C., Birmingham, for appellants.
Robert P. Bynon, Jr., Birmingham, for appellees.
Patricia N. Moore, Birmingham, guardian ad litem.
YATES, Presiding Judge.
J.S. and his wife E.S. appeal from a judgment awarding D.W. and J.W. grandparent visitation pursuant to § 26-10A-30, Ala.Code 1975, with T.S., the 4-year-old adopted daughter of J.S. and E.S. On appeal, J.S. and E.S. argue that D.W. and J.W. lack standing to bring the action and they also challenge the constitutionality of that statute.
The family relationships between the parties are somewhat unconventional. In 1994, S.S. (the son of J.S. and E.S.) and A.W. (the daughter of D.W. and J.W.), lived together for a brief period and conceived a daughter, T.S. A.W. and S.S. terminated their relationship after T.S.'s birth. Both A.W. and S.S. had serious personal problems that rendered them incapable of caring for T.S. For the first two years of her life, T.S. was cared for by D.W. and J.W. in their home; J.S. and E.S. frequently visited her during that period. During that same time, D.W. and J.W. began to experience marital problems, and they eventually divorced. J.W. continued to care for T.S. in her home after she and D.W. separated.
In 1996, when T.S. was almost two years old, J.W. and D.W. approached J.S. and E.S. about the possibility of J.S. and E.S. adopting T.S., because providing full-time care for the child had become too physically demanding on J.W. J.S. and E.S. agreed, and D.W. convinced his adopted daughter A.W. to give her consent to the adoption. T.S. was adopted by J.S. and E.S. in 1997.[1] D.W. paid for one-half of the attorney fees associated with the adoption proceeding.
For a short time immediately after the entry of the final order of adoption in early 1997, D.W. and J.W. visited the child on a regular basis and took her to their homes for overnight visits. Approximately two months after the adoption was complete, however, the formerly congenial relationship between D.W. and J.W. and J.S. and E.S. deteriorated. J.S. and E.S. discovered that T.S. suffered from allergies and asthma. They claimed that her worst asthmatic episodes occurred after she returned from visits in the homes of D.W. and J.W. J.S. and E.S. claimed that J.W. smoked in the child's presence and that T.S. was extremely allergic to J.W.'s cat. In response to these claims that the child's health was jeopardized by her visits with D.W. and J.W., D.W. consulted with T.S.'s allergist, who advised him how to control the child's environment to minimize her asthma symptoms. Upon learning of the allergist's recommendations, J.W. found a new home for her cat and stopped smoking in her home. Both D.W. and J.W. made efforts to clean their respective homes[2] in accordance with the allergist's recommendations, *177 but J.S. and E.S. refused D.W. and J.W. visitation with the child, except in the home of J.S. and E.S. and under the supervision of J.S. and E.S.
On August 10, 1998, D.W. and J.W. petitioned for grandparent visitation, pursuant to § 26-10A-30. J.S. and E.S., on February 2, 1999, moved to dismiss the petition, stating as grounds that D.W. and J.W. did not qualify as "natural" grandparents as contemplated by § 26-10A-30, because they had adopted A.W., their granddaughter, who is also T.S.'s mother. J.S. and E.S. argue that D.W. and J.W. are T.S.'s "natural" great-grandparents, rather than "natural" grandparents. J.S. and E.S. further alleged in their motion that the petition for visitation pursuant to § 26-10A-30 was an unconstitutional infringement on their right to privacy. The attorney general was given notice of the constitutional challenge, pursuant to § 6-6-227. After a hearing, the trial court overruled J.S. and E.S.'s motion to dismiss.
A guardian ad litem was appointed to represent T.S.'s interest; she filed a report with the court that favorably described the homes of D.W. and J.W. The guardian ad litem did not make a recommendation regarding visitation, but requested that if the trial court granted visitation it do so on a gradual basis to allow the child sufficient time to readjust to D.W. and J.W., because they had not seen each other for over a year. This is because neither D.W. or J.W. felt comfortable visiting T.S. in J.S. and E.S.'s home.
At the hearing, J.S. and E.S. expressed their concern that visitation with D.W. and J.W. would cause T.S. to experience health problems. J.S. and E.S. also testified that they were concerned that A.W., the child's birth mother, would return to D.W. or J.W.'s home and kidnap the child. The testimony indicated that A.W. was continuing to experience substance-abuse problems. A.W. now lives in Kentucky and rarely contacts D.W. and J.W; J.S. and E.S. admitted that their son (T.S.'s biological father) was presently incarcerated on a conviction of grand larceny, and they testified that they had taken the child to visit him in prison. After the hearing, the trial court entered a judgment awarding visitation to J.W. and D.W. pursuant to § 26-10A-30.
J.S. and E.S. contend that D.W. and J.W. have no standing to bring a petition seeking visitation pursuant to § 26-10A-30, because, they say, D.W. and J.W. are not the "natural" grandparents as contemplated in the language of that section. Section 26-10A-30 provides that "[p]ost-adoption visitation rights for the natural grandparents of the adoptee may be granted when the adoptee is adopted by [certain family members]." We note that, in advancing this argument, J.S. and E.S. appear to equate the term "natural" with the term "biological." It is undisputed that the child's mother, A.W., is the biological granddaughter of D.W. and J.W. However, D.W. and J.W. adopted A.W. when she was a child and, under Alabama law, they are to be treated as A.W.'s natural parents. Section 26-10A-29 provides that, after adoption, "the adoptee shall be treated as the natural child of the adopting parent or parents and shall have all rights and be subject to all of the duties arising from the relation, including the right of inheritance." It follows that if A.W. is to be treated as the "natural child" of D.W. and J.W., then they are to be treated as A.W.'s "natural" parents. Following this line of reasoning, we find it clear that, under Alabama law, D.W. and J.W. are treated as "natural" grandparents of T.S., who is A.W.'s biological daughter.
It is instructive to compare § 26-10A-30 with another recently enacted statute codified at § 30-3-4.1; this new statute also *178 provides for grandparent visitation. This new statute did not become effective until September 1, 1999almost one year after D.W. and J.W. had filed their petition pursuant to § 26-10A-30. Although this newly enacted statute has no application to the present case, we find noteworthy its definition of "grandparent." Section 30-3-4.1 defines a "grandparent" as "the parent of a parent of a minor child, the parent of a minor child's parent who has died, or the parent of a minor child's parent whose parental rights have been terminated when the child has been adopted pursuant to Section 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent and relative adoption." We conclude that J.W. and D.W. have standing to bring the present action.
Therefore, D.W. and J.W., i.e., the biological great-grandparents of T.S., have standing under § 26-10A-30 to ask for grandparent visitation with T.S., because they adopted their biological granddaughter. Any other interpretation would contradict Alabama law and its mandate that adopted children be treated the same as biological children. Cf. Gotlieb v. Klotzman, 369 So.2d 798 (Ala.1979)(adopted children are treated the same as biological children under will); Kernop v. Taylor, 644 So.2d 971 (Ala.Civ.App.1994)(father must pay child support for adopted child because adopted children have equal status with biological children).
J.S. and E.S. also challenge the constitutionality of § 26-10A-30. J.S. and E.S. have served a copy of their brief on the attorney general, in compliance with Rule 44, Ala. R.App. P.; that office has waived the right to appear in this appeal.
The history of grandparent visitation in Alabama is as follows: In 1980, the legislature enacted § 30-3-3, which abrogated the common-law proposition that grandparents possessed no legal right of visitation, and created a right of visitation when the parents were divorcing. In 1983, the legislature repealed § 30-3-3 and enacted § 30-3-4. The intent of the 1983 statute was to expand "grandparental rights to visitation to include the situation involving the death of one of the grandchild's parents." Mills v. Parker, 549 So.2d 97, 98 (Ala.Civ.App.1989).
In a case pending before the repeal of § 30-3-3, the supreme court decided Ex parte Bronstein, 434 So.2d 780 (Ala.1983), wherein it addressed the question whether natural grandparents who want to visit their grandchildren may obtain visitation rights when the children's natural mother has subsequently remarried and the natural father has consented to the stepfather's adoption of the children. The supreme court held that § 30-3-3 applied only in situations where the court was considering a divorce case. The supreme court further stated:
"[A]doption, like birth, creates legal relationships under which adoptive parents gain certain rights which pre-empt any visitation rights by natural parents or grandparents. Consequently, we hold that because there is a societal importance in the establishment of a permanent and stable family unit, see Pendergrass v. Watkins, 383 So.2d 851, 855 (Ala.Civ.App.1980), an adoption of a child must necessarily sever all former family bonds and relationships. The courts are not free, therefore, to intervene on behalf of relatives who seek visitation, especially when the child's adoptive parents have decided not to permit visitation."
Id. at 783-84.
In 1984, the year after Ex parte Bronstein was decided, the legislature amended the adoption statute, § 26-10-5, to create an exception to the general rule that an *179 adoption order that terminates the rights of the natural parents also terminates the rights of the natural grandparents. That exception provided:
"[A]t the discretion of the court, visitation rights for the natural grandparents of the minor children may be maintained, or allowed upon petition of modification after the final order of adoption is entered."
In 1990, § 26-10A-30 replaced § 26-10-5. The constitutionality of § 26-10A-30 has never before been challenged. It is interesting to note that former § 30-3-4[3] the predecessor to § 30-3-4.1, was challenged in Cockrell v. Sittason, 500 So.2d 1119 (Ala.Civ.App.1986). Even though the appellant in Cockrell had not raised that issue at the trial level, the court, with little discussion and citing no caselaw, declared that statute constitutional.
J.S. and E.S. argue that § 26-10A-30 infringes on their familial rights, which, they argue, fall within a recognized zone of privacy, in contravention of the Alabama Constitution and of the United States Constitution. Section 26-10A-30 provides:
"Post-adoption visitation rights for the natural grandparents of the adoptee may be granted when the adoptee is adopted by a stepparent, a grandfather, a grandmother, a brother, a half-brother, a sister, a half-sister, an aunt or an uncle and their respective spouses, if any. Such visitation rights may be maintained or granted at the discretion of the court at any time prior to or after the final order of adoption is entered upon petition by the natural grandparents, if it is in the best interest of the child."
While this appeal was pending, the United States Supreme Court handed down an opinion in which six Justices of that Court affirmed the Washington Supreme Court's decision striking down Washington's nonparental-visitation statute as an unconstitutional infringement on parents' fundamental rights to rear their children. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). In Troxel, the Supreme Court stated that, with regard to child-visitation rights, "the right of parents to make decisions concerning the care, custody, and control of their children" is a fundamental right protected by the Due Process Clause. The Supreme Court struck down the Washington statute, which allowed "any person" at "any time" to seek visitation rights with a child and provided that visitation might be awarded if "visitation may serve the best interest of the child." 530 U.S. at 67, 120 S.Ct. at 2061.
The plaintiffs in Troxel were the paternal grandparents of two illegitimate children of their deceased son; they sought visitation with the children. The grandparents requested two weekends of overnight visitation per month and two weeks of visitation during the summer. The mother did not oppose the visitation, but, instead, objected to the amount of visitation requested by the grandparents. The mother requested that the grandparents have one day of visitation per month, with no overnight stay. The trial court granted the grandparents visitation for one weekend per month, one week during the summer, and four hours on each grandparent's birthday.
The mother appealed. The Washington Court of Appeals reversed the trial court's order and dismissed the grandparents' petition for lack of standing. On review, the Washington Supreme Court held that the *180 grandparents had standing but that the statute was unconstitutional for two reasons. First, the court found that the statute did not require that a person seeking visitation make a showing that in the absence of the requested visitation the child was at risk, and such a showing, the court held, is required before the state can interfere with parents' rights to rear their children. Second, the court held that the statute was too broad in allowing "any person" at "any time" to seek visitation and requiring only that the visitation serve the best interests of the child.
The Supreme Court of the United States affirmed the Washington Supreme Court's judgment, concluding that what it called the "breathtakingly broad" statute, as applied to the mother, violated her due-process rights to make decisions concerning the care, custody, and control of her children. In reaching its decision, the Supreme Court noted that the statute contained no requirement that the parent's decision be given any presumption of validity or any special weight. 530 U.S. at 70, 120 S.Ct. at 2062-63. The Supreme Court held that because the grandparents had not alleged that the mother was unfit, it must be presumed that the mother had acted in the best interests of her children. 530 U.S. at 68, 120 S.Ct. at 2061. The problem, the Supreme Court said, was not that the trial court intervened, but that in so doing it gave no special weight to the mother's determination of her children's best interests. 530 U.S. at 69-70, 120 S.Ct. at 2062. Indeed, the trial court presumed the opposite and placed the burden on the mother to prove that visitation would not be in the best interests of her children. 530 U.S. at 69-70, 120 S.Ct. at 2062.
The Supreme Court's plurality opinion in Troxel is also notable for the issues it left unanswered. First, the Court declined to determine whether, as a condition precedent to visitation, the Due Process Clause requires a showing of harm or potential harm to the child. The Court did not define "the precise scope of the parental due process right in the visitation context." 530 U.S. at 73, 120 S.Ct. at 2064. The Court did not issue a per se holding that all nonparental visitation statutes are unconstitutional. 530 U.S. at 73-74, 120 S.Ct. at 2064. The members of the plurality agreed with Justice Kennedy's statement in his dissent that the "constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied." 530 U.S. at 73, 120 S.Ct. at 2064-65. The reason the Court did not make a per se ruling on constitutionality is that states, in ruling on the constitutionality of their own nonparental-visitation statutes, have made these determinations in the past on a case-by-case basis, because the outcome depends on the application of those statutes. 530 U.S. at 73-74, 120 S.Ct. at 2064. The Troxel Court noted differing provisions in various state statutes governing grandparent visitation. 530 U.S. at 73-74, 120 S.Ct. at 2064. This too, would affect the constitutionality of a particular statute.
Although the Troxel Court recognized the parental rights at issue as fundamental, the court did not articulate a standard of review to be applied to laws impinging on such rights. As Justice Thomas noted in his concurrence, "the opinions of the plurality, Justice Kennedy, and Justice Souter recognize such a [parental] right, but curiously none of them articulates the appropriate standard of review." Troxel, 530 U.S. at 80, 120 S.Ct. at 2068 (Thomas, J., concurring).
Justice O'Connor, writing for the plurality, recognized that the Due Process Clause "includes a substantive component that `provides heightened protection against *181 government interference with certain fundamental rights and liberty interests.' [Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)]; see also Reno v. Flores, 507 U.S. 292, 301-302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)." 530 U.S. at 65, 120 S.Ct. at 2060.
The plurality opinion then went on to cite the following cases concerning parental rights, in its recognition that parental rights are fundamental: Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (statutory bar against teaching a foreign language struck down); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (upholding the right of parents to send their children to a private school); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (upholding a child-labor law that prohibited children from selling magazines in the street or other public place, against a freedom-of-religion claim); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (state statute that automatically allowed the State to assume custody of a child whose mother had died, without allowing the unwed father to assert parental rights, violated due-process and equal-protection guarantees); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) ("best-interests-of-the-child" standard adequately protected unwed father's due-process rights where he had never supported or attempted to legitimate the 11-year-old child involved in an adoption proceeding); Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (applying strict scrutiny, the Court held state statute authorizing parents to commit their children to mental institutions without the child's consent did not deny due process); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (due process requires that proceedings to terminate parental rights use the "clear-and-convincing" standard of proof); Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (holding that terminally ill patients do not have a fundamental liberty interest in committing suicide).
Although Meyer, 262 U.S. at 399-400, 43 S.Ct. 625, and Pierce, 268 U.S. at 534-35, 45 S.Ct. 571, appear to apply a "rational-basis" standard in the context of parental rights, by holding that State interference must not be "arbitrary or without reasonable relation to some purpose within the competency of the state to effect," see Meyer, 262 U.S. at 400, 43 S.Ct. 625, those cases were decided before the Supreme Court had developed the "strict-scrutiny" analysis. See Poe v. Ullman, 367 U.S. 497, 548, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Graham v. Richardson, 403 U.S. 365, 375-76, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). In Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court applied a "strict-scrutiny" analysis in striking down a statute that required all children, including Amish children who had challenged the statute as a violation of the right to free exercise of religion, to attend school until they were 16. However, the Yoder Court indicated that had the parents' concerns been only secular, then the "rational-review" standard would apply. These cases recognize that the family is not beyond regulation in the public interest. However, we note that Meyer, Pierce, and Yoder involved parental rights in the context of public education. As the Yoder Court stated, providing a public education is "the very apex of the function of the State." 406 U.S. at 213, 92 S.Ct. 1526. Providing nonparental visitation is not. Further, Yoder also indicates that a higher standard of review may be warranted with certain fundamental rights, depending on *182 their character and the context in which they are asserted.
In contrast, the parental rights involved in the present case concern a parent's right "in the companionship, care, custody, and management of his or her child." Stanley v. Illinois, 405 U.S. at 651, 92 S.Ct. 1208. Court-ordered visitation whereby on a weekly or monthly basis a child is taken from the parent's custody for days or weeks at a time, over the parent's objection, can hardly be characterized as a minimal intrusion. Because this case involves the fundamental right to parent, we will apply a strict-scrutiny analysis.
The common law recognized a right of parents to determine with whom their child would associate. In contrast to parents, grandparents generally had no common-law right to visitation if the parents objected. Ex parte Bronstein, 434 So.2d 780; Ronald W. Nelson, "Troxel v. Granville: The Supreme Court Wades Into the Quagmire of Third-Party Visitation," 12 No. 6 Divorce Litig. 101 (June 2000). The Supreme Court noted in Troxel that all 50 states now have grandparent-visitation statutes, which vary in form. The Troxel Court recognized that these statutes were, in part, a response to the fact that we have an increasing number of children living in single-parent households. The number of unmarried and divorced parents has increased, along with the number of stepfamilies. David T. Whitehouse, Comment, 76 N.D. L.Rev. 191, 196 (1999) (relating to Hoff v. Berg, 595 N.W.2d 285 (N.D.1999), declaring the North Dakota grandparent-visitation statute unconstitutional). Also, the lobbying effort on behalf of an increasing number of senior citizens has been seen as a reason for the success of efforts promoting grandparent-visitation statutes. Comment, 76 N.D. L.Rev. at 198.
The earlier grandparent-visitation statutes required for their invocation some form of disruption in the core family, such as death, divorce, incarceration, incompetency, loss of parental rights, or some harm or threat of harm to the child. Karen A. Nalle, Comment, Whose Child Is It Anyway: The Unconstitutionality of the Texas Grandparent Visitation Statute, 51 Baylor L.Rev. 721, 726 (1999). More recent statutes have allowed for grandparent visitation regardless of the status of the family unit. See, e.g., § 30-3-4.1(b)(5), Ala.Code 1999; Idaho Code § 32-719 (1999); Texas Family Code § 153.433(2)(F); Revised Code of Washington § 26.10.160(3).
There are generally three categories of grandparent-visitation statutes. Comment, 51 Baylor L. Rev at 733-41. The first kind of statute is an open-ended statute that allows visitation without a showing of harm to the child and balances the parents' fundamental rights with the best interests of the child. An example is the Florida statute addressed in Beagle v. Beagle, 678 So.2d 1271 (Fla.1996). In Beagle, the Florida Supreme Court held Florida's grandparent-visitation statute unconstitutional because it violated the parents' right to rear their children free from government intervention and infringed upon the parents' privacy. The Florida statute was open-ended, because it granted visitation solely upon a finding that visitation was in the child's best interests. The court held the statute to be facially unconstitutional, on the basis that it impermissibly interfered with parental rights protected by the Florida and United States Constitutions. The court held that without a showing of harm to the child, the State was unable to satisfy a compelling state interest required under the privacy provisions in the Florida Constitution. That court applied the doctrine of "strict scrutiny."
*183 The second kind of grandparent visitation is provided by a modified open-ended statute that specifically defines the best interests of the child with regard to whether harm to the child is present. Comment, 51 Baylor L.Rev. at 737. This kind of statute intertwines a finding of substantial harm to the child within the definition of "best interests" of the child. In Herndon v. Tuhey, 857 S.W.2d 203 (Mo.1993), the Missouri Supreme Court held that state's statute constitutional because, the court held, the statute did not impose an undue burden on parents' childrearing rights and was narrowly tailored to protect the interests of the parties. The best interests of the child, as defined by the statute, were the focal point. The court appears to have applied a heightened scrutiny, judging by its use of the terms "undue burden" and "narrowly tailored." 857 S.W.2d at 210.[4]
The third kind of statute is one that requires a court to apply a "best-interests-of-the-child" analysis, along with making a finding of harm to the child, before granting visitation. Comment, 51 Baylor L.Rev. at 793. The Georgia Supreme Court, in Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769 (1995), applied the "strict-scrutiny" standard to its statute, which allowed grandparents to ask for visitation "under any circumstances" if visitation served the best interests of the child. The court held that there must be an element of harm present before the State can legitimately infringe on parents' fundamental rights. The Georgia Legislature has since amended its statute to require a showing of harm to the child before grandparent visitation is allowed. § 19-7-3, Ga.Code.
In King v. King, 828 S.W.2d 630 (Ky. 1992), the Kentucky Supreme Court upheld that state's statute, under a "rational-basis" review. The court took a novel approach and declared that grandparents have a fundamental right to visit their grandchildren, stating that the legislature had the power to strengthen family bonds. This, in effect, was comparing two fundamental rights; review under some standard less than "strict scrutiny" may be appropriate where competing fundamental rights are at issue. See Carey v. Population Servs. Int'l, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (intermediate scrutiny applied where reproductive rights and parental rights were competing in case involving a minor).
The Tennessee Supreme Court in Hawk v. Hawk, 855 S.W.2d 573 (Tenn.1993), held Tennessee's grandparent-visitation statute unconstitutional by applying "strict scrutiny." The court rejected the argument that the best interests of the child constituted a compelling State interest that would be upheld in a "strict-scrutiny" analysis.
In Hoff v. Berg, 595 N.W.2d 285 (N.D. 1999), the North Dakota Supreme Court held North Dakota's statute unconstitutional, on the basis that it burdened the parents' fundamental right to control their children's associations. The court used the "strict-scrutiny" analysis in determining that a compelling State purpose did not justify the infringement upon this right.
The statute in the present case is open-ended and allows for grandparent *184 visitation "at the discretion of the court" and when "it is in the best interest of the child." The petition may be filed at "any time" before or after the adoption. Although the "best-interests" standard applies in custody and visitation statutes involving parents, those cases involve competing parental rights. In other words, in those cases the rights of both the mother and the father are involved and neither parent's rights outweigh the other's. Also, the "best-interests" standard is used when no fit parent is available, such as in a termination case where the State is attempting to provide an alternative parenting plan. Just as in Troxel, there have been no allegations that J.S. and E.S. are unfit parents.
In contrast to parental rights, a grandparent's right to visitation is a recent statutory creation and is not a fundamental right on an equal footing with the right of a parent. This statute does not require a showing that the child will be harmed if grandparent visitation is not granted. The statute provides no factors for the court to consider in its analysis and no mandate that the court make findings of fact. There is no presumption in favor of the fit parents' decision. "The Due Process Clause does not permit a State to infringe on the fundamental rights to make child-rearing decisions simply because a state judge believes a `better' decision could be made." Troxel, 530 U.S. at 72-73, 120 S.Ct. at 2064. With the goal of adoption being to create new, presumably more stable, familial bonds, a statute infringing upon the new parents' rights must be narrowly tailored in a manner least restrictive of the parents' rights. Although the statute in Troxel was broader than § 26-10A-30, in that it allowed "any person" to ask for visitation, the Supreme Court's holding was not based on the fact that "any person" could petition for visitation, but, rather, was based on grandparents' visitation rights. In other words, the statute was not held facially unconstitutional, but was held unconstitutional as applied. In the present case, § 26-10A-30, as applied, is unconstitutional, because it infringes upon J.S. and E.S.'s fundamental right to parent.
Based on the foregoing, the judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MURDOCK, J., concurs specially.
CRAWLEY, J., concurs in the result.
THOMPSON and PITTMAN, JJ., concur in part and dissent in part.
MURDOCK, Judge, concurring specially.
The appellants are adoptive parents. More importantly, however, they are parents.
In Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), the Supreme Court recognized that "the importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays `in promot[ing] a way of life' through the instruction of children as well as from the fact of blood relationship." See also Michael H. v. Gerald D., 491 U.S. 110, 123-24, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (referring to "sanctity" traditionally accorded to "the relationships that develop within the unitary family"); Stanley v. Illinois, 405 U.S. 645, 651-52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In distinguishing between the due process protection afforded to foster parents and natural parents, the Supreme *185 Court in Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), noted:
"No one would seriously dispute that a deeply loving and interdependent relationship between an adult and a child in his or her care may exist even in the absence of a blood relationship.... Adoption, for example, is recognized [under New York law] as the legal equivalent of biological parenthood."
431 U.S. at 844 and n. 51, 97 S.Ct. 2094. As all the judges of this court today agree, the same is true in Alabama. I therefore concur in the main opinion.
CRAWLEY, Judge, concurring in the result.
I conclude that Ala.Code 1975, § 26-10A-30, is unconstitutional. Judge Yates concludes that the statute is unconstitutional as applied. I conclude that the statute is per se or facially unconstitutional. I cannot conceive of any situation where this statute could be constitutional. If a parent were found unfit, custody and visitation arrangements would be governed by the dependency jurisdiction of the juvenile court. See Ala.Code 1975, § 12-15-1 et seq., and § 26-18-1 et seq. Simply put, a fit parent's decision regarding who visits his or her child cannot be regulated by the state.
Judge Yates follows the reasoning of the plurality opinion of the United States Supreme Court in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). I would adopt the reasoning of Justice Thomas's concurring opinion:
"Our decision in Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), holds that parents have a fundamental constitutional right to rear their children, including the right to determine who shall educate and socialize them.... I would apply strict scrutiny to infringements of fundamental rights. Here, the State of Washington lacks even a legitimate governmental interestto say nothing of a compelling onein second-guessing a fit parent's decision regarding visitation with third parties."
530 U.S. at 80, 120 S.Ct. 2054.
THOMPSON, Judge, concurring in part and dissenting in part.
I concur in the holding that D.W. and J.W., the biological great-grandparents of T.S., have standing, pursuant to § 26-10A-30, Ala.Code, 1975, to seek visitation with T.S. because of their adoption of their biological granddaughter.
I dissent, however, from the holding that § 26-10A-30, as applied by the trial court, is unconstitutional. In his dissent, Justice Kennedy joined with the four Justices concurring in the Troxel opinion in the admonition to the courts that "constitutional protections in [the area of nonparental-visitation statutes] are best `elaborated with care.'" Troxel v. Granville, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
The statute being challenged in the present case, § 26-10A-30, is a much narrower statute than the "breathtakingly broad" Washington statute reviewed by the Troxel Court. Unlike the Washington visitation statute, which allowed any person to petition for visitation under any circumstances, § 26-10A-30 permits only "natural grandparents," a limited class of persons, to petition for visitation in the limited category of intrafamily[5] adoptions. § 26-10A-30, Ala.Code, 1975.
*186 Moreover, unlike the Washington Superior Court's judgment that was reviewed by the Troxel Court, a judgment containing "slender findings," the trial court's judgment on review here contained the following specific finding:
"The Court finds that the adoptee previously had a relationship with [the petitioners], having lived in their home until she was approximately two years old. Both biological parents have problems which prevented them from assuming a child-rearing role with the adoptee. During such time that the adoptee lived with [the petitioners] they allowed [the paternal grandparents who ultimately adopted the child] to maintain visitation with the adoptee away from their home, and eventually suggested and facilitated [the paternal grandparents'] adoption [of the child]...."
I believe we may infer from this finding that the petitioners established a bond during the child's initial two formative years and that they fostered a healthy relationship with the paternal grandparents, who ultimately adopted the child, with the petitioners' assistance.
Section 26-10A-30, Ala.Code, 1975, permits the trial court to determine, in its discretion, whether visitation would serve the child's best interest. Alabama domestic-relations courts have traditionally used the "best interest-of-the-child" standard on a case-by-case basis in visitation proceedings. This narrowly drafted statute currently under review was apparently designed to foster close family bonds that had existed before the intrafamily adoption proceedings occurred. Given the limited context addressed by § 26-10A-30, I conclude that that statute, as written and as applied in the present case, is not unconstitutional.
Although I recognize and share the concerns expressed in the main opinion and in Judge Crawley's special concurrence pertaining to the fundamental rights of parents to rear their children without interference, I do not believe the limited ruling in Troxel can be extended to declare this narrowly drafted statute unconstitutional on its face.
PITTMAN, J., concurs.
NOTES
[1] Neither the petition seeking the adoption nor the judgment granting that petition are contained in the record. From the testimony presented, however, we presume that J.S. and E.S. adopted T.S. pursuant to § 26-10A-28.
[2] D.W. and J.W. were divorced at the time of trial and when the judgment was entered. In its final judgment, the trial court specified the hours T.S. was to visit in J.W.'s home and the hours she was to visit in D.W.'s home.
[3] The legislature amended § 30-3-4 in 1989 and 1995 to expand grandparent visitation. In 1999, § 30-3-4.1 replaced § 30-3-4, further expanding grandparent visitation.
[4] Subsequent to Troxel, a Missouri appeals court followed the holding of the Missouri Supreme Court in Herndonthat the statute was constitutionalbecause the Missouri statute was not as broad as the Washington statute and because of the unanswered questions left by the Troxel court. In re G.P.C., 28 S.W.3d 357 (Mo.App.2000). But Cf., Brice v. Brice, 133 Md.App. 302, 754 A.2d 1132 (2000) (Maryland court held its grandparent-visitation statute unconstitutional, based on Troxel, even though Maryland's statute was not as broad as Washington's).
[5] The statute specifically relates to a situation "when the adoptee is adopted by a stepparent, a grandfather, a grandmother, a brother, a half-brother, a sister, a half-sister, an aunt or an uncle and their respective spouses, if any." § 26-10A-30, Ala.Code, 1975.