**Joe and Lois SANTI, Appellants,**

v.

**Mike and Heather SANTI, Appellees.**

No. 00–0181.

Supreme Court of Iowa.

Sept. 6, 2001.

Iowa Code section 602.9206 (2001).

Thomas P. Schlapkohl of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellants.

Thomas J. Berg, Des Moines, for appellees.

Karen A. Wyle, Bloomington, Indiana, for amicus curiae Coalition for the Restoration of Parental Rights.

Rochelle Bobroff and Michael Schuster, Washington, D.C. for amicus curiae AARP.

NEUMAN, Justice.

This appeal concerns that portion of Iowa's grandparent visitation statute that permits court-ordered visits regardless of whether circumstances such as divorce, the death of a parent, or an adoption have otherwise prompted court intervention in the family's affairs. *See* Iowa Code § 598.35(7) (1999). Here, married parents

in an intact nuclear family oppose, on constitutional grounds, the paternal grandparents' asserted right to visit their three-year-old granddaughter over the parents' objection.

The district court was convinced following hearing that the grandparents met the statutory criteria justifying court-ordered visits. It nevertheless ruled section 598.35(7) unconstitutional on its face because the statute authorizes visits without a threshold finding that the parents are unfit or their decision to deny visits poses substantial harm to the child. In the court's words, "the state lacks a sufficiently compelling justification for the infringement on the fundamental and natural rights of parents to raise their children as they see fit."

On our de novo review, we agree that the statute cannot withstand strict scrutiny under article I, sections 8 and 9 of the Iowa Constitution. We therefore affirm the court's dismissal of the grandparents' petition, a decision rendering moot the parents' cross-appeal.

## I. Background Facts.

Appellants, Joe and Lois Santi, are the parents of appellee, Mike Santi. Mike and his wife, appellee Heather Santi, are the parents of Taylor Janene Santi. At the time of trial, Joe and Lois were in their mid-fifties, Mike and Heather were in their mid-twenties, and little Taylor was three and a half. All are lifelong residents of Des Moines. Joe works as a scheduling supervisor at Firestone. Lois is an administrative assistant at Drake University. Mike holds an associate degree from Des Moines Area Community College. Heather, a CPA, works as an accounts receivables manager for a local company. Taylor is a happy, well-adjusted child who is adored by her parents and grandparents alike.

So why are these nice folks embroiled in this litigation? The answer is both baffling and heartbreaking. Feelings were hurt early on when Joe and Lois reneged on a promised honeymoon cruise for the newlyweds because Taylor, then an infant, would not be left in their care. After patching up this spat, the parties enjoyed a period of relative harmony during which Joe began routinely babysitting for Taylor on his days off. Old resentments surfaced, however, when Joe and Lois bought Taylor's first shoes and took her to see Santa Claus without Mike and Heather's permission. Other disagreements arose over seemingly minor matters such as how much "fast food" Taylor was permitted to eat while staying at her grandma and grandpa's.

As with many families, there has been tension over how much time must be spent with in-laws at the holidays. But unlike most families, the Santis—both elder and younger—seem unable to get beyond their disagreements, whether great or small. Over time, communication broke down completely. Counseling proved to be of no avail. By the time the case came to trial, Mike and Heather had not permitted Joe and Lois to see Taylor for nearly a year. They simply believed their lives—and, accordingly, Taylor's—were less stressful without the interaction. Joe and Lois were devastated.

## II. Legal Proceedings.

Joe and Lois petitioned for grandparent visitation under Iowa Code section 598.35(7). The statute states:

The grandparent or great-grandparent of a child may petition the district court for grandchild or great-grandchild visitation rights when any of the following circumstances occur:

. . . .

7. A parent of the child unreasonably refuses to allow visitation by the grandparent or great-grandparent or unreasonably restricts visitation. This subsection applies to but is not limited in application to a situation in which the parents of the child are divorced and the parent who is the child of the grandparent or who is the grandchild of the great-grandparent has legal custody of the child.

A petition for grandchild or great-grandchild visitation rights shall be granted only upon a finding that the visitation is in the best interests of the child and that the grandparent or great-grandparent had established a substantial relationship with the child prior to the filing of the petition.

Iowa Code § 598.35(7).

In a preliminary procedural skirmish, Mike and Heather urged the court to find that Joe and Lois had no standing to seek visitation over the parents' objection. The court ruled that grandparents' standing was expressly authorized by the statute. It also noted, however, that Mike and Heather raised no constitutional infirmities. Following the court's cue, Mike and Heather amended their answer to allege the unconstitutionality of section 598.35(7), on its face and as applied to them.

A two-day trial yielded the facts sketched out above. All of the parties testified, as well as interested family members. In addition, Joe and Lois called a psychologist who had counseled the parties over the visitation issue. He ascribed the families' estrangement principally to Heather's stubbornness in the face of what she perceived to be controlling behaviors by Joe and Lois. Although he had never met or observed Taylor, he offered his general opinion that severing the bonds between grandchild and grandparent could be potentially detrimental to the child.

After reaffirming the earlier determination that Joe and Lois had standing to sue for visitation, the court addressed the constitutionality of section 598.35(7). It first determined that a parent's right to the care, custody and control of his or her children is a fundamental right protected by article I, section 8 of the Iowa Constitution. It then determined that the state's power of *parens patriae* is implicated only upon a threshold showing of substantial harm to the child. Applying a strict-scrutiny analysis, the court concluded "absent a requirement of harm, Iowa Code § 598.35(7) is unconstitutional because it deprives parents in an intact nuclear family of the fundamental right to determine their child's upbringing." Accordingly, the court did not address the issue of whether the statute was unconstitutional as applied.

Joe and Lois moved to expand and enlarge the court's findings pursuant to Iowa Rule of Civil Procedure 179(b). They asked the court to rule whether they had met their burden of proof under the statute as well as to reconsider its ruling on the statute's constitutionality. They argued in district court, as they do on appeal, that section 598.35(7) embraces the concept of harm the court found lacking.

The court rejected Joe and Lois's harm analysis and refused to reconsider its ruling on the statute's constitutionality. It did, however, find by a preponderance of evidence that (1) Joe and Lois had established a substantial relationship with Taylor before the petition was filed, (2) Mike and Heather had unreasonably denied visitation, and (3) visitation with Joe and Lois would be in Taylor's best interest. This appeal and cross-appeal followed.

### III. Issues on Appeal.

Joe and Lois urge several grounds for reversal. First they contend the Supreme Court's decision in *Troxel v. Granville*, 530

U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), holding Washington's grandparent visitation statute unconstitutional as applied, is not controlling insofar as Iowa's statute is concerned. Second they challenge the district court's decision to apply strict scrutiny in its review of section 598.35(7), arguing the intrusion on families posed by grandparent visitation is minimal and requires only satisfaction of the rational basis test. Third they contend that, even applying strict scrutiny, the statute passes constitutional muster because the state need not make a threshold showing of harm to establish a compelling interest in maintaining grandparent-grandchild bonds. Alternatively, if proof of substantial harm must be shown to justify the state's intrusion in a parent's decision, they claim the requirement is already embodied in the protections section 598.35(7) affords parents.

Mike and Heather counter that, while *Troxel* may not control the outcome of this appeal, infirmities identified by the Court in the Washington statute apply with equal force to the statute before us, particularly the fact that section 598.35(7) accords no deference to parental decision making. They also contend the district court properly applied strict scrutiny, stressing *Troxel's* reaffirmation of the fundamental right of parents to direct the upbringing of their children without state interference. In doing so, Mike and Heather argue, the Court thereby rejected any argument that court-ordered grandparent visitation creates only minimal intrusion warranting lower-level scrutiny.

### IV. Scope of Review.

■ Because this appeal poses questions of substantive due process and liberty interests in the context of statutory interpretation, we are obliged to review the record de novo, making our own evaluation of the totality of the circumstances. *Stanley v. Fitzgerald,* 580 N.W.2d 742, 744 (Iowa 1998). Statutes are presumed constitutional, imposing on the challenger the heavy burden of rebutting that presumption. *Id.* Moreover, if a statute is susceptible to more than one construction, one of which is constitutional and the other not, we are obliged to adopt the construction which will uphold it. *Iowa City v. Nolan,* 239 N.W.2d 102, 103 (Iowa 1976). A facial attack on a statute, however, implies that it is "totally invalid and therefore, 'incapable of any valid application.'" *State v. Brumage,* 435 N.W.2d 337, 342 (Iowa 1989) (quoting *State v. Duncan,* 414 N.W.2d 91, 96 (Iowa 1987)).

### V. Analysis.

As we turn to the merits of this controversy, two preliminary questions confront us: Which constitution, state or federal, are we being asked to apply? And what level of constitutional scrutiny does the challenged state action implicate?

■ *A. State or federal?* As to the first question, we note that Mike and Heather's amended answer alleged a substantive due process violation but failed to specify whether their constitutional challenge rested on the Iowa Constitution or the United States Constitution. The court found the statute violated article I, section 1 (and, implicitly, section 9) of the Iowa Constitution.[1] Neither side sought an expansion of the court's ruling on the point. Accordingly, our review will focus on the

---

1. Article I, section 1 of the Iowa Constitution secures to "[a]ll men and women ... certain inalienable rights—among which are those of enjoying and defending life and liberty ... and pursuing and obtaining safety and happiness." Section 9 of the same article states "no person shall be deprived of life, liberty, or property, without due process of law."

import of the pertinent Iowa constitutional provision. We do so mindful of the fact that although the state and federal due process clauses are nearly identical in scope, import and purpose, "it is the exclusive prerogative of our court to determine the constitutionality of Iowa statutes challenged under our own constitution." *Callender v. Skiles*, 591 N.W.2d 182, 187 (Iowa 1999). Thus while federal court analysis of similar provisions in the United States Constitution may prove helpful, those interpretations do not bind us. *Id.*

■■ *B. Level of constitutional scrutiny.* Mike and Heather's substantive due process claim rests on a line of cases, both state and federal, interpreting the concept of due process "to include a substantive component, which forbids the government to infringe certain "fundamental" liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993); *accord Washington v. Glucksberg*, 521 U.S. 702, 722, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772, 788 (1997); *State v. Klawonn*, 609 N.W.2d 515, 519 (Iowa 2000). Because this heightened protection, known as strict scrutiny, applies only to those cases implicating fundamental rights, determining whether an asserted right is "fundamental" is the first step in any substantive due process analysis. *Glucksberg*, 521 U.S. at 722, 117 S.Ct. at 2268, 138 L.Ed.2d at 788; *Klawonn*, 609 N.W.2d at 519. As noted by the Supreme Court in *Glucksberg*—a case involving Washington's ban on assisted suicide—this threshold requirement "avoids the need for complex balancing of competing interests in every case." 521 U.S. at 722, 117 S.Ct. at 2268, 138 L.Ed.2d at 789. If the right at issue is not deemed fundamental, a reviewing court merely applies the familiar rational

basis test to determine whether a reasonable fit exists between the government's purpose in enacting the statute and the means chosen to advance it. *Klawonn*, 609 N.W.2d at 519.

Commentators have been quick to point out that the *Troxel* plurality did not specify the appropriate level of scrutiny for statutes that infringe on the parent child relationship. *See, e.g.,* Bryan Thomas White, Note, *Muddling Through the Murky Waters of* Troxel: *Will Grandparent Visitation Sink or Swim,* 39 Fam. & Conciliation Cts. Rev. 104, 108 (2001). Yet the Court left no doubt about the status of parents' interest in the care, custody, and control of their children, describing it as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel,* 530 U.S. at 65–66, 120 S.Ct. at 2060, 147 L.Ed.2d at 56 (relying on *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599, 606 (1982); *Parham v. J.R.,* 442 U.S. 584, 602, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101, 118 (1979); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511, 519 (1978); *Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15, 35 (1972); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 652 (1944); *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 574, 69 L.Ed. 1070, 1078 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 1045 (1923)). This court has likewise acknowledged this parental caretaking interest as fundamental. *Callender v. Skiles,* 591 N.W.2d 182, 190 (Iowa 1999); *In re Bruce,* 522 N.W.2d 67, 72 (Iowa 1994); *Olds v. Olds,* 356 N.W.2d 571, 574 (Iowa 1984).

■ We note that some courts have viewed grandparental visitation statutes as

creating only minimal intrusion on parents' protected liberty interests, thereby concluding that rational basis review is sufficient. *See, e.g., King v. King,* 828 S.W.2d 630, 632 (Ky.1992) (not "unreasonable" for state to promote "loving relationship between family members"); *Herndon v. Tuhey,* 857 S.W.2d 203, 209 (Mo.1993) (grandparental visitation rights "less than substantial encroachment on a family"); *R.T. v. J.E.,* 277 N.J.Super. 595, 650 A.2d 13, 16 (1994) (visitation statute "rationally related" to New Jersey's "legitimate interest ... in promoting grandparent-grandchild relationships"). These pre-*Troxel* decisions rest on the recognition that the right to marry and rear children without governmental interference is not unlimited. *See, e.g., Herndon,* 857 S.W.2d at 208 (citing *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618, 631 (1978)); *King,* 828 S.W.2d at 631 (noting parents required by law to see that children are educated, inoculated against disease, free from abuse and restrained when riding in automobiles). But the case before us is not about car seats or vaccinations. We are convinced that the nature of the liberty interest impacted here—the decision by fit, married parents to oppose visitation by third parties outside their nuclear family—is one that, in Iowa, has historically been protected by the highest level of scrutiny. As this court has already observed in connection with a former grandparent visitation statute challenged in *In re Bruce,*

> [t]here are several policy reasons supporting a limitation on visitation by third parties other than the noncustodial parent. In *Olds* we noted that the limitation demonstrates a respect for family privacy and parental autonomy. The rule recognizes that the government is ill-equipped to dictate the details of social interaction among family members. It also recognizes that *the parenting*

> *right is a fundamental liberty interest that is protected against unwarranted state intrusion.*

522 N.W.2d at 71 (emphasis added).

We conclude that section 598.35(7) must be reviewed under a strict scrutiny standard. Thus, to withstand challenge under our state constitution, the infringement on parental liberty interests implicated by the statute must be "narrowly tailored to serve a compelling state interest." *Klawonn,* 609 N.W.2d at 519.

*C. Compelling state interest.* At the heart of this case is the question of what compelling state interest, if any, section 598.35(7) advances. By its terms, the statute authorizes the court to override a parental decision about whether, and to what extent, grandparents (or great-grandparents) may visit a grandchild. Visitation may be ordered if (1) the parent unreasonably refuses or restricts visitation, (2) visitation would serve the child's best interests, and (3) the grandparents or great-grandparents have previously established a substantial relationship with the child. Iowa Code § 598.35(7). Conspicuously absent from the statute is any rationale—compelling or otherwise—for this court-ordered intrusion on parental decision-making. By contrast, other subsections of the visitation statute address impediments to visitation created, or exacerbated by, extraordinary events or prior state involvement in the family. *See* Iowa Code §§ 598.35(1)-(6) (parents are divorced, petition for dissolution has been filed, parent of the grandchild has died, child placed in foster home, divorce followed by stepparent adoption, child born out of wedlock).

Joe and Lois, supported by amicus curiae AARP, suggest the Iowa law (and others like it around the country) serves to strengthen extended familial bonds in an era plagued by social ills such as divorce,

drug use and teen pregnancy. Mike and Heather, along with amicus curiae Coalition for the Restoration of Parental Rights, argue that whatever benefits may accrue from strong grandparent-grandchild relationships in happy families, such benefits are unlikely to result when visitation is imposed over parental objection. The family disruption caused by litigation is not only contrary to the presumed goal of strengthening families, they argue, "such counter-productive measures cannot be deemed even rationally related to that goal, let alone necessary and narrowly tailored."

Many other state courts have wrestled with this dilemma. A few, as noted in the previous section of this opinion, have regarded grandparent visitation as a minimal intrusion on parents' liberty interests and therefore upheld their statutes as reasonable governmental regulation under rational basis analysis. *E.g., King,* 828 S.W.2d at 632–33; *Herndon,* 857 S.W.2d at 210–11; *R.T.,* 650 A.2d at 15–16.

A greater number of courts, applying strict scrutiny, have ruled that their grandparent visitation statutes are unconstitutional to the extent they permit a court to order grandparent visitation over the objections of married, fit parents without a showing of actual or potential harm to the children. *E.g., Beagle v. Beagle,* 678 So.2d 1271, 1275–77 (Fla.1996) (statute allowing grandparent visitation upon best interest finding unconstitutional under state constitution as impermissible interference with parents' privacy interest in absence of showing of harm to child); *Brooks v. Parkerson,* 265 Ga. 189, 454 S.E.2d 769, 771, 773–74 (1995) (statute allowing grandparent visitation on showing of "special circumstances which make such visitation rights necessary to best interests of the child" is unconstitutional infringement of parents' fundamental liberty and privacy interests because it does not clearly promote children's health or welfare nor require a showing of harm prior to allowing visitation); *In re Herbst,* 971 P.2d 395, 398–99 (Okla.1998) (statute allowing grandparent visitation upon showing that visitation in child's best interest, but not requiring proof of harm, violated parents' liberty interests under federal and state constitutions); *Hawk v. Hawk,* 855 S.W.2d 573, 579–80 (Tenn.1993) (statute allowing grandparent visitation upon showing that such visitation is in child's best interest violates state constitutional provision protecting parents' right to privacy).

The United States Supreme Court weighed in on the matter in *Troxel.* There the Court faced a Washington state statute authorizing "any person" at "any time" to petition for visitation, which petition could be granted whenever the court found such visitation served the child's best interest. *Troxel,* 530 U.S. at 67, 120 S.Ct. at 2061, 147 L.Ed.2d at 57 (quoting Wash. Rev. Code § 26.10.160(3) (1994)). Describing the statute as "breathtakingly broad," the Court faulted the law, not only for its nearly unlimited scope, but for its failure to accord any preference to the historical presumption that fit parents act in the best interests of their children. *Id.* at 68–69, 120 S.Ct. at 2061–62, 147 L.Ed.2d at 58–59. It found the Washington statute exceeded the bounds of the Due Process Clause because it failed to provide any protection for the parent's "fundamental constitutional right to make decisions concerning the rearing of her own daughter." *Id.* at 70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59. The Court then cited with approval state statutes and court decisions that, unlike the Washington statute, protect that fundamental right. *See, e.g.,* Cal. Fam.Code § 3104(e) (West 1994) (rebuttable presumption that grandparent visitation *not* in child's best interest if parents agree otherwise); Me.Rev.Stat. Ann., tit. 19A,

§ 1803(3) (West 1998) (authorizing visitation if in child's best interest *and* does not significantly interfere with parent-child relationship or "parent's rightful authority over the child"); *Hoff v. Berg,* 595 N.W.2d 285, 291–92 (N.D.1999) (holding visitation statute unconstitutional because it disregards presumption favoring parental decision-making, forcing parents to prove visitation *not* in child's best interest).

Summing up, the Court described the compelling interest at stake in *Troxel* this way:

> In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Troxel,* 530 U.S. at 70, 120 S.Ct. at 2062, 147 L.Ed.2d at 59.

In post-*Troxel* decisions, courts of last resort in Maryland and Illinois have likewise held their state visitation statutes unconstitutional where grandparents were required to prove only that visitation was in their grandchild's best interest without a preliminary finding that the parents opposing the visits were unfit to make that decision. *Lulay v. Lulay,* 193 Ill.2d 455, 250 Ill.Dec. 758, 739 N.E.2d 521, 534 (2000); *Brice v. Brice,* 133 Md.App. 302, 754 A.2d 1132, 1135–36 (2000); *see also Rideout v. Riendeau,* 761 A.2d 291, 301–03 (Me.2000) (holding grandparent visitation statute serves compelling state interest in maintaining grandparent-grandchild relationship where grandparents had raised child for period of time, but agreeing with

trial court that something more than child's best interest must be established to serve compelling state interest). *But see In re G.P.C.,* 28 S.W.3d 357, 365–66 (Mo. Ct.App.2000) (holding *Troxel* not controlling where state's supreme court previously held rational basis review sufficient based on minimal intrusion of grandparent visitation and other parental protections afforded by visitation statute).

Turning to the Iowa statute before us, we note that while it does not suffer from the patently unconstitutional scope of the Washington statute, it nevertheless fails to accord fit parents the presumption deemed so fundamental in *Troxel.* Section 598.35(7) places the best interest decision squarely in the hands of a judge without first according primacy to the parents' own estimation of their child's best interests. Without a threshold finding of unfitness, the statute effectively substitutes sentimentality for constitutionality. It exalts the socially desirable goal of grandparent-grandchild bonding over the constitutionally recognized right of parents to decide with whom their children will associate.

The district court wisely recognized the statute's infirmity. The court refused to substitute its judgment about the reasonableness of Mike and Heather's decision about visitation, even though—applying its own parental instincts—the court believed that withholding visitation with Joe and Lois was unreasonable and not in Taylor's best interest. It reasoned that it should not assume a *parens patrie* role without a threshold finding that the parents were unfit to make the visitation decision confronting them. As another state supreme court observed in this context,

> [a]n approach requiring a court to make an initial finding of harm to the child before evaluating the "best interests of

the child" works ... to prevent judicial second-guessing of parental decisions. *Hawk,* 855 S.W.2d at 581.

Joe and Lois rightly argue that the district court here, unlike the plurality in *Troxel,* rested its decision on the conclusion that substantive due process requires a finding of substantial harm to the child before grandparent visitation may be ordered over the parents' opposition. The court in *Troxel* declined to reach that question and, on our de novo review, so do we. We believe the analysis is unnecessary because of the historic presumption that fit parents' decisions will benefit their children, not harm them. *See Troxel,* 530 U.S. at 68, 120 S.Ct. at 2061, 147 L.Ed.2d at 58.

We believe that section 598.35(7) is fundamentally flawed, not because it fails to require a showing of harm, but because it does not require a threshold finding of parental unfitness before proceeding to the best interest analysis. It is true that a consideration of potential harm to the child would customarily be included in any best-interest analysis. *See* Iowa Code § 598.1 (defining "[b]est interest of the child" to include opportunity for maximum visitation with both parents "unless direct physical or significant emotional harm to the child may result from this contact"). But, unlike the other subsections of section 598.35 which contemplate some breakdown between parents before a judge is authorized to make a difficult choice for them, section 598.35(7) permits the court to usurp that judgment over the joint decision of two fit parents. In other words, rather than narrowly tailoring the statute to serve the needs of children with disputing parents, the legislature has broadly swept even fit parents and intact families under the court's wing. Given the liberty interests

at issue, it cannot be permitted to do so. As the *Troxel* court stated, "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel,* 530 U.S. at 72–73, 120 S.Ct. at 2064, 147 L.Ed.2d at 61. We hereby interpret article I, sections 8 and 9 of the Iowa constitution to afford fit parents that same protection.

## VI. Conclusion.

■ We are convinced that fostering close relations between grandparents and grandchildren is not a sufficiently compelling state interest to justify court-ordered visitation over the joint objection of married parents in an intact nuclear family. Because Iowa Code section 598.35(7), on its face, permits such state intrusion on fit parents' fundamental liberty interest in childrearing, we find it facially unconstitutional under article I, sections 8 and 9 of the Iowa Constitution. We therefore affirm the district court's dismissal of the grandparents' petition. Our decision renders moot the parents' cross-appeal. Costs are taxed to the appellants.

**APPEAL AFFIRMED; CROSS APPEAL MOOTED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to

Iowa Code section 602.9206 (2001).