# IN THE COURT OF APPEALS OF IOWA

No. 14-1039
Filed February 11, 2015

IN THE MATTER OF THE GUARDIANSHIP
OF C.R.,
    A Minor Child,

COLLEEN ROBINSON and CEDRICK ROBINSON,
    Petitioner-Appellees,

v.

DUSTIN ATKINSON,
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Craig E. Block, Associate Probate Judge.

    A biological father appeals the district court's order establishing a permanent guardianship for the minor child and appointing the maternal grandparents as the minor's guardians. **REVERSED AND REMANDED WITH DIRECTIONS.**

    Christina I. Thompson of Phil Watson, P.C., Des Moines, for appellant.

    Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellee.

    Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

Dustin Atkinson appeals following the district court's order establishing a permanent guardianship for his biological child. The order appointed the child's maternal grandparents, Colleen and Cedric Robinson, as co-guardians. Dustin claims the Robinsons failed to rebut the presumption the minor should be placed with him as the biological father and the child's best interests are best served by transitioning the child into his care. We agree the permanent guardianship should be reversed because the district court failed to make the statutory finding Dustin is not a "qualified and suitable" caregiver. We remand the case to the district court for continuation of the temporary guardianship and to institute a plan to introduce the child to Dustin and transition the child's care to him.

## I. Background and Proceedings.

The child at issue was born in August of 2010. The child's biological parents are Selena Robinson and Dustin Atkinson. Dustin was not supportive of Selena during the pregnancy nor was he present for the birth. A stipulated custody order was entered in October 2011, placing the child in Selena's sole legal custody and physical care, and granting Dustin "reasonable and liberal visitation . . . as the parties can agree." As of the time of the guardianship trial in this case, Dustin had never met the child. However, a support order was entered, and Dustin has paid child support through an income withholding order.

The child has primarily resided with Selena and Selena's adopted parents, Colleen and Cedric Robinson. Selena died in February 2014, and following her death, Colleen and Cedric petitioned for both a temporary and a permanent guardianship to be established for the child with them appointed as co-guardians.

On February 17, 2014, the temporary guardianship was granted, ex parte, as the child required medical treatment. Colleen and Cedric were eventually able to locate Dustin. He resisted the establishment of a permanent guardianship and requested instead the temporary guardianship continue to allow the child to be slowly transitioned into his care, at which point the guardianship would be terminated.

The case was tried to the probate court in May 2014, and the court issued its decision in June 2014 establishing a permanent guardianship and appointing Colleen and Cedric as co-guardians. The court also ordered the parties to attend mediation to work out a visitation arrangement for Dustin and the child. If an agreement could not be reached at the mediation, the court retained jurisdiction to establish an appropriate visitation schedule in the best interests of the child.

Dustin now appeals claiming Colleen and Cedric did not rebut the presumption in his favor as the biological father and it is in the best interests of the child to be transitioned into his care.

## II. Scope and Standard of Review.

The parties disagree as to the applicable standard of review. We acknowledge that the case law regarding the applicable standard of review continues to be muddy, but we agree with our court's analysis in *In re Guardianship and Conservatorship of D.D.H.*, 538 N.W.2d 881, 882–83 (Iowa Ct. App. 1995), that the appropriate standard of review for cases involving the establishment of a guardianship is for errors at law, not de novo. The Iowa Code clearly states that actions for the involuntary appointment of guardians and conservators shall be triable in probate as law actions. *See* Iowa Code

§§ 633.33, .555 (2013). Our review of actions tried at law is for the correction of errors at law. *See* Iowa R. App. P. 6.907. The trial court's factual findings are binding on us, and we will affirm that decision, if it is supported by substantial evidence. *In re Guardianship of M.D.*, 797 N.W.2d 121, 127 (Iowa Ct. App. 2011). To the extent Dustin raises a constitutional challenge based on his allegation of a due process violation of his rights as the child's parent, our review is de novo. *Santi v. Santi*, 633 N.W.2d 312, 316 (Iowa 2001).

## III. Guardianship.

A guardian may be appointed where the ward is a minor and there is a need for the guardianship. *See* Iowa Code §§ 633.552, .556(1). Once the need for the guardianship and the status of the ward are established by clear and convincing evidence, the question becomes who should be appointed as guardian. *See id.* § 633.556. Iowa Code section 633.559 provides in part: "[T]he parents of a minor child, or either of them, *if qualified and suitable*, shall be preferred over all others for appointment as guardian." (Emphasis added.) This code provision establishes "a strong presumption that a child's welfare is best served in the care and control of its natural parents." *Northland v. Starr*, 581 N.W.2d 210, 212 (Iowa Ct. App. 1998). However, "a parent who has taken 'an extended holiday from the responsibilities of parenthood' may not take advantage of the parental preference for custody." *In re Guardianship of Roach*, 778 N.W.2d 212, 215 (Iowa Ct. App. 2009). In every case, our concern is for the best interests of the child. *Northland*, 581 N.W.2d at 212.

Dustin has conceded the need for the guardianship, at least temporarily, as he recognized he was not capable of taking custody of his child in light of the

fact that he had never met the child up to that point of the guardianship trial.[1]  In addition, he lived in a mobile home that was not big enough to house the child in addition to Dustin's other three children.[2]  Therefore, the fighting issue in the case is whether the guardianship is to be temporary or permanent.  The district court found the Robinsons had been the child's primary caregivers since her birth, a critical role they assumed providing stability and security for the child.  Dustin did not dispute their devotion to the child but claims the court erred in failing to make a finding that he is an "unfit" parent, which he contends is a required first step before instituting a permanent guardianship.  *See M.D.*, 797 N.W.2d at 127 (noting a proposed guardian has the burden to prove the natural parent is not a qualified and suitable caregiver); *see also Troxel v. Granville*, 530 U.S. 57, 68 (2000) ("[T]here is a presumption that fit parents act in the best interests of their children."); *Santi*, 633 N.W.2d at 321 (finding the grandparent visitation statute unconstitutional where the statute failed to require a threshold finding of parental unfitness).  While the district court concluded placing the child

---

[1] At the guardianship hearing, Dustin testified:

> I understand that.  And I actually want to transition plan.  I want—I want it to be slow.  I don't want it to be tomorrow or the next day or even two months from now.  I would never do that to a kid.
>
> . . . .
>
> I see them—I would gladly given them all the paperwork they need to help them with—you know, my—you know, like to have—to be able to take [the child] to [the] doctor and things like that if I can't.  But—I mean, as of right now, given the fact that I wouldn't have met [the child] very long, I would grant all of that access to set things up and do all of that.  But I don't see them—like, I'm not—I don't know how to put it.  I—permanent guardianship, I don't see them needing.  Temporary with a transition order and a time frame, I see.
>
> Q. And what do you think that time frame is?  A. I'd like to get a psychologist involved and possibly figure that out with, you know, all of us.

[2] Dustin testified his parents had recently inherited Dustin's grandfather's four-bedroom home and planned to rent that home to him.

with the Dustin would be "emotionally traumatic," the court never concluded that Dustin was not a "qualified and suitable" caregiver. In fact the court anticipated the development of a parent-child relationship and stated:

> [I]t's clear that the ward has established a bond with the grandparents, and to place the child in the control of the father would be emotionally traumatic at her age. If returning the child to the custody of a parent is likely to have a seriously disruptive or disturbing effect upon the child's development, this fact must prevail. With this said, it's not unfeasible that the father can take necessary steps to try to establish a father-child relationship. He should be given that opportunity.

Dustin has physical care of the three children he shares with his ex-wife, and his ex-wife testified that Dustin is a "great father." Dustin's father also testified to the care and attention Dustin provides to his other three children. However, with respect to the child at issue in this case, the district court found, "The father has never sent any cards, recognized any birthday of the child, and it was [not] until this guardianship was established that he has taken affirmative action to establish a father-child relationship." Dustin claims Selena prevented him from seeing the child and his finances prevented him from initiating action in court to enforce his visitation rights before this guardianship case was initiated. He testified he attempted to locate Selena and the child over the years only to have Selena threaten legal action if he contacted them again. No evidence to the contrary was offered.

Dustin also claims he has consistently provided financial support for the child through an income withholding order. While financial support is critical in raising a child, this alone does not automatically make a qualified and suitable parent. *See In re C.A.V.*, 787 N.W.2d 96, 102 (Iowa Ct. App. 2010) (noting in a

private termination-of-parental-rights action that financial support alone does not overcome the father's complete abstention from the child's physical, social, and emotional development); *see also In re J.L.Z.*, 421 A.2d 1064, 1064-65 (Pa. 1980) ("This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. . . . Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life."). The court acknowledged Dustin had provided at least minimal financial support for the child.

Colleen and Cedric, while of retirement age, have demonstrated they are clearly capable of caring for the child both financially and emotionally, but this conclusion is not sufficient to rebut the presumption in favor of the natural parent. "Recognition that a non-parent may provide excellent parenting to the child will 'rarely be strong enough to interfere with the natural rights of the parent.'" *M.D.*, 797 N.W.2d at 128 (citation omitted). The court never made a finding as to whether Dustin was a "qualified and suitable" caregiver. Without this statutorily required finding, Colleen and Cedric could not be preferred over Dustin. *See* Iowa Code § 633.559.

The court's obvious concern was the overarching best interests of this child, who knew nothing of Dustin and who has lived with and been nurtured by Colleen and Cedric the child's entire life. *See Northland*, 581 N.W.2d at 213 (noting the heavy burden placed on a child adjusting to a new caregiver). The guardian ad litem recognized the difficulty of the situation but asserted Dustin had abdicated his parental duties, while the grandparents had provided

consistency for this young child. The court concluded, and we agree, that to simply place the child in Dustin's care at this time would be emotionally traumatic, particularly in light of the recent loss of the child's mother. *See In re Guardianship of Knell*, 537 N.W.2d 778, 782 (Iowa 1995) ("[I]f return of custody to the child's natural parent 'is likely to have a seriously disrupting and disturbing effect upon the child's development, this fact must prevail.'").[3] A carefully crafted transition plan with professional counseling would minimize the trauma to the child. Both Colleen and Cedric testified they are supportive of the child having a relationship with Dustin and have offered visitation. The court, finding Dustin should have the opportunity to establish a relationship with the child, ordered the parties to attend mediation to make a specific visitation plan. The court also suggested the parties use a counselor or child therapist to provide a healthy introduction.[4]

We conclude substantial evidence does not support the district court's order establishing Colleen and Cedric as the child's permanent guardians, as no

---

[3] Dustin claims the lack of psychological testimony establishing the harm the child would face if transitioned into his care sets this case apart from *Knell*. However, there was testimony from Colleen and Cedric that the child at issue does not handle transitions well and is still dealing with the loss of the child's mother. Colleen testified that if there was a further disruption in the child's life at this time,

> You're going to have a terrorist on your hands. [The child's] got a temper. And [the child] would not adjust well. [The child] did not adjust well to [the child's] mom's passing. [The child] didn't adjust well to the fact that people in [the child's] life, a lot of whom were not allowed to see [the child] because of things that were happening until something could— and the loss of my daughter and getting things done—[the child] was safe. I made sure that [the child] was safe. And the rest of this would take care of itself.

We conclude substantial evidence supports this finding of the district court.

[4] The court stated in its order: "The court is strongly recommending that the parties participate in mediation to try to work out a visitation schedule . . . . It's highly suggested that the use of a counselor and/or child therapist may be necessary in order to establish those parental bonds."

finding was made that Dustin was not a "qualified and suitable" caregiver. We therefore must reverse the district court's order. On remand the temporary guardianship should continue. After the previously ordered mediation, the district court should put into place a visitation plan incorporating its suggestion of utilizing a counselor or child therapist with the goal that the child can eventually be transitioned to Dustin's care. The court can then monitor as to when the temporary guardianship should terminate after the successful completion of the transition process.

**REVERSED AND REMANDED WITH DIRECTIONS.**

Doyle, J., concurs; McDonald, J., concurs in part and dissents in part.

**MCDONALD, J.** (concurring in part and dissenting in part)

I agree with the majority's conclusion that the Robinsons have failed to rebut the presumption that care, custody, and control of this child shall be placed with her father. I write separately to discuss the proof necessary for a nonparent to obtain care, custody, and control of a child against the wishes of a natural parent and because I disagree with the remedy ordered in this case.

The interest of parents in the care, custody, and control of their children is a fundamental liberty interest with which the State cannot interfere without establishing a compelling governmental interest for doing so. The right was initially recognized in the seminal case of *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), in which the Court upheld the right of parents to "establish a home and bring up children." The right repeatedly has been reaffirmed by the Supreme Court. In *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944), the Court concluded that "custody, care, and nurture of the child reside first in the parents." In *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972), the court reiterated the primacy of parental rights, stating the "primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." The issue was again revisited in *Troxel v. Granville*, 530 U.S. 57 (2000), where the court addressed the constitutionality of Washington's grandparent visitation statute. The Court discussed the long history of cases protecting parents' rights, concluding "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. The *Troxel* Court held Washington's statute was overbroad

because it allowed grandparents to visit a child over parental objection without any showing the parent was unfit. *See id.* at 68-69 (stating so long as a parent is "fit," there will normally be no reason for state interference).

After *Troxel*, the Iowa Supreme Court addressed the issue of grandparent visitation rights. In *Santi v. Santi*, 633 N.W.2d 312, 321 (Iowa 2001), the court held part of Iowa's grandparent visitation statute facially unconstitutional under article I, sections 8 and 9 of the Iowa Constitution. The court reasoned that parents' rights to the care, custody, and control of their children is a fundamental interest subject to interference only for a compelling interest. *Santi*, 633 N.W.2d at 318. The court explained the grandparent visitation statute was fundamentally flawed "because it does not require a threshold finding of parental unfitness before proceeding to the best interest analysis." *Id.* at 321. The court revisited a different provision of the law in *In re Marriage of Howard*, 661 N.W.2d 183 (Iowa 2003). There, the court affirmed its conclusion that interference with the fundamental right of parents to the care, custody, and control of their children requires the State to establishing a compelling interest. *Howard*, 661 N.W.2d at 188. It noted the "essential presumption of fitness accorded a parent." *Id.* at 190. In holding the law unconstitutional, the court explained "the best interests of a child requirement . . . is insufficient" to establish a compelling state interest. *Id.* at 191. The court concluded the statute was unconstitutional on its face because it "not only fails to recognize the degree of harm or potential harm to the child needed to support state intervention, but it 'fails to require a threshold finding of parental unfitness.'" *Id.* at 192 (quoting *Santi*, 633 N.W.2d at 321).

The guardianship statute provides "the parents of a minor child, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." Iowa Code § 633.559. The code does not define "qualified and suitable." Our cases have not clearly defined "qualified and suitable." In light of *Troxel*, *Santi*, and *Howard*, in a guardianship proceeding involving nonparents seeking to establish care, custody, and control over a child contrary to the legal parent or parents' wishes, "qualified and suitable" should be interpreted to require proof the parent(s) is "unfit." At minimum, this requires evidence the parent cannot provide the child with reasonable parental care, meaning nurturing and protection adequate to meet the child's physical, emotional, and mental health needs and that the parent's inability to provide reasonable parental care poses a substantial and material risk of harm to the child. *See, e.g.*, *People ex rel. N.D.V.*, 224 P.3d 410, 418 (Colo. App. 2009) (defining "unfit").

Turning to the facts of this case. The majority reverses the district court's order on the ground the district court did not make the required statutory finding Dustin was not "qualified and suitable." I agree the district court must be reversed on that basis. I would go further, however, and note there is not substantial evidence in this record supporting such a finding even if it had been made. The father was unaware of the child until the time of her birth. After learning he was the child's father, the father made repeated attempts to contact the child only to be thwarted by the mother, including the mother's threat to file harassment charges against him. Having few resources, the father did not pursue the matter further, although he did continue to pay substantial child

support. The father is employed full time, has primary care of his three children from a previous marriage, and is, by all accounts, a "great" caretaker and father to those children. There is no evidence the father is "unfit" or otherwise not "qualified and suitable."

The remedy in this case should be reversal of the district court's order with direction the child immediately be placed in the care, custody, and control of the father. While some of our past cases have established a temporary guardianship to allow transition of the child, that now seems unwarranted in light of *Troxel*, *Santi*, and *Howard*. The guardianship statute and these cases require a finding the parent is not qualified and suitable, or unfit, before a nonparent can be appointed as guardian of a child against the parent's wishes. The statute makes no distinction between temporary and permanent guardianships in the legal showing necessary to rebut the presumption of parental fitness in appointing a guardian. If there is insufficient evidence in one case, there is insufficient evidence in the other.

A recent case directly addressed this issue. In *In re Guardianship and Conservatorship of J.M.M. and A.D.M.*, No. 13-0945, 2014 WL 667669, at *1 (Iowa Ct. App. Feb. 19, 2014), the grandparents applied to serve as their grandchildren's guardians following the death of the grandchildren's father. The children's mother, who had been largely absent for more than nine years because the father "thwarted regular contact," resisted the application. *See J.M.M.*, 2014 WL 667669, at *1. The district court denied the grandparents' application, terminated the temporary guardianship, and ordered custody and care transferred to the mother. *See id.* Our court affirmed the immediate

transfer of care, custody, and control. *See id.* at *3. The same result should obtain here.

A practical consideration also militates in favor of immediate transfer of care, custody, and control to the father. The district court's order was issued in June 2014. In that order, the court directed the parties to attend mediation and establish visitation for the father. We should assume the parties have complied with the district court's order and commenced visitation. Because a substantial period of time has now passed to allow the father to establish a relationship with the child, no further transition period should be necessary.

For the foregoing reasons, I respectfully concur in part and dissent in part.