# IN THE COURT OF APPEALS OF IOWA

No. 25-1059
Filed October 15, 2025

IN THE INTEREST OF E.H., K.H., and A.H.,
Minor Children,

C.H., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.

A father challenges the dispositional order in his child-in-need-of-assistance case. **AFFIRMED.**

Felicia M. Bertín Rocha of Bertín Rocha Law, P.C., Urbandale, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Clara Avenarius of Branstad & Olson Law Office, Des Moines, attorney and guardian ad litem for minor children.

Nickole Miller of Drake Legal Clinic, Des Moines, attorney for minor child E.H.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

A father appeals the juvenile court's dispositional order confirming the adjudication of his three children as needing assistance (CINA) and continuing their removal from his custody. He contends that the Iowa Department of Health and Human Services denied him due process by requiring him to participate in drug testing and by not communicating effectively with him. The father also argues that it was unreasonable for the court to continue the removal of the children based on his refusal to take drug tests. Given the State's proof that A.H. had been exposed to methamphetamine in the home and the mother's report that she and the father used methamphetamine together, we affirm the juvenile court's order.[1]

## I.     Facts and Prior Proceedings

The department received a report in early January 2025 that the children's mother was using methamphetamine while caring for the children. At that time, E.H. was fourteen, K.H. was eleven, and A.H. was five years old. When the child protection worker discussed the allegations with the mother, she acknowledged using methamphetamine (though not in the presence of the children). The mother agreed to take a drug test. She added that the father had a history of methamphetamine use. The mother also reported using drugs with the father.

---

[1] The State must prove its CINA allegations by clear and convincing evidence. Iowa Code § 232.96(2) (2025). And we review the CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We also review constitutional claims de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). That review allows us to assess the facts and the law and "adjudicate rights anew." *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021) (citation omitted). We are not bound by the juvenile court's fact findings; but we give them weight. *Id.* "Our primary concern is the children's best interests." *J.S.*, 846 N.W.2d at 40.

In his affidavit in support of removing the children from parental custody, the child protection worker relayed his interactions with the father:

> During [the] interview, the father claimed the mother was a liar, insisted he did not use methamphetamine and said he had never used methamphetamine. Despite this, he was reluctant to do a drug test because he was not the alleged perpetrator but ultimately said he would agree to one in the event the mother's drug test came back positive. He reported he was unaware of the mother's methamphetamine use despite residing in the same home. The father maintains that, because he and the mother are separated, he should not be held accountable for her actions. Subsequent to that visit, the father sent a number of emails with a series of questions related to the assessment. The initial[] emails were answered timely yet he continued to send multiple email[s] asking the same questions repeatedly. He was invited to meet with a supervisor in person to discuss his questions and concerns but declined that offer [and] insisted that all communication be done in writing.

The mother's sweat patch test, recorded in late January, was positive for methamphetamine.[2] But the father reneged and refused the department's request to test.

The juvenile court approved the State's petition for temporary removal on January 31. The children were placed with an adult sibling. As part of its post-removal procedures, the department coordinated a hair test for five-year-old A.H. to determine whether she had been exposed to drugs. The test came back positive for methamphetamine and amphetamine.

A few days later, the State petitioned for a CINA adjudication, citing Iowa Code section 232.96A(3)(b) and 232.96A(14) (2025). After a hearing, the court issued a removal order on February 10. The following month, the court held an adjudication hearing. At that hearing, counsel for the father told the court that he

---

[2] The department also learned that the mother had a miscarriage in late December 2024, and the umbilical cord tested positive for methamphetamine.

was not contesting adjudication, had no request for services, and was "having adequate visitation with his children."

In late March, the court issued the CINA adjudication, finding clear and convincing evidence to support the grounds alleged by the State. The order required both parents to "comply with all drug screen requests made by [the department]."

In May, the father moved for a "hearing regarding court-ordered services." In that motion, he objected to the requirement that he comply with the department's request for drug screens. He claimed that the department and the court had violated his "protections under the 14th Amendment and other Amendments of the U.S. Constitution; and under the Iowa State Constitution." Because he believed that his constitutional rights were being violated he refused to obtain a substance-use or mental-health evaluation, refused to comply with drug testing, and "any other requests" by the department.

At the CINA disposition hearing in June, the father testified that his constitutional rights were on "the verge of being violated." He insisted that he did nothing wrong at the original removal and did not believe that A.H.'s drug screen was positive for methamphetamine and amphetamine. He also asserted that the department needed "reasonable suspicion" to request a drug test from a parent. And he complained that the child protection worker did not explain his rights as a parent and phrased things "in a threatening way." The father also insisted that the worker did not discuss a safety plan with him.

At the close of the hearing, the juvenile court responded to the father's concerns:

> Even if I am willing to assume that [the child protection worker] was maybe more gruff or rough around the edges than people would have liked him to have been, . . . when I read the [child protection assessment] and . . . the plan that was developed, it's abundantly clear from the [assessment] that the plan was: the kids will stay with [the father] contingent upon him providing a drug screen, and then he just refused to do it.

The court also explained its reason for ordering the father to engage in screening for methamphetamine use:

> [W]hile we have admitted use from one parent, that parent also, in the course of the child protective assessment, indicated that the other parent, [the father], used at least at some point. And then when we have . . . this child testing positive when in the care of both parents, that creates concern about whether both parents or just one parent is using. And the way we alleviate those concerns in the juvenile court context is through the use of drug testing.

The court told the father that "sometimes parents are faced with an uncomfortable choice between exercising their rights and effectively participating in child welfare cases. And the courts have not found that that violates the Constitution."

In its dispositional order, the juvenile court found "the bulk of [the father's] testimony non-credible." It also rejected the father's claim that his constitutional rights were violated by the department and the court:

> It isn't all that clear the exact nature of [the father's] alleged violations other than a general disagreement with how he was treated but he references generally due process concerns. Due process guarantees a person a right to a hearing and to present evidence which has been provided three times. Ultimately, [the father's] objections seem to just be disagreement with the conclusions made based on the evidence presented . . . .

The juvenile court thus confirmed the CINA adjudication. The father appeals that dispositional order.

## II.    Discussion

The protests in the father's petition on appeal can be distilled down to two issues: (1) Did the department violate his due process rights?  And (2) did the district court abuse its discretion in ordering him to engage in drug testing?

Before addressing those two issues, we note that the father's complaints focusing on the children's removal are moot.  *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("We cannot go back in time and restore custody based on alleged errors in the initial removal order.").  Given their mootness, we do not address the father's claims that the child protection worker treated him with disrespect, ignored his questions, and bullied him.  Nor do we consider the father's claim that it was unreasonable for the department to require him to engage in drug testing as part of its safety plan to avoid removal.  Instead, we limit our analysis to the court's decision to affirm adjudication and continue removal in its dispositional ruling.

### A.  Due Process Rights

The father is correct that due process protects his interest in the care, custody, and control of his children; in fact, the right of parenting is "perhaps the oldest of the fundamental liberty interests" recognized by our courts.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see Santi v. Santi*, 633 N.W.2d 312, 317 (Iowa 2001) (discussing *Troxel* and line of substantive due process cases).  Yet that liberty interest is not absolute; parents may forfeit their interest in the integrity of the family unit by engaging in conduct that would endanger their children.  *In re I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988).  "Because the State, as parens patriae, has the duty to assure that every child within its borders receives proper care and treatment, it must intercede when parents abdicate that responsibility."

*In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). But due process would be offended if the State tried to interfere in a family without some showing of parental unfitness. *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978).

As for procedural due process, parents must have "notice and a meaningful opportunity to be heard." *In re K.M.*, 653 N.W.2d 602, 607 (Iowa 2002); *see also A.M.H.*, 516 N.W.2d at 870 (recognizing parents' procedural due process rights in termination and CINA proceedings).

The father contests the juvenile court's rejection of the demands listed in his "motion for hearing regarding court-ordered services." He maintains that his due process rights were violated by the court's dispositional order confirming his children to be adjudicated CINA and upholding the removal "even though he objected to the unfounded need for drug testing." He does not specify if his challenge falls under substantive or procedural due process. We assume without deciding we can reach his claim despite the ambiguity in the briefing.

Without more specificity, it is difficult to assess the father's constitutional claim. But best as we can tell, he believes that requiring drug testing as a prerequisite to reunification interferes with his substantive due process right to the custody and care of his children. In his words, "it was unreasonable to require substance abuse testing, as he repeatedly told [the department] that he was innocent of using illicit substances."

As our supreme court has said, "[t]he concept of 'substantive due process' is not easily defined." *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) (reviewing termination of parental rights). But as the court found in *D.J.R.*, we need not "establish the exact boundaries of that concept [here], however, because wherever

they lie," the confirmation of the CINA adjudication and the continued removal was "well within them." *Id*. Where valid statutory grounds for CINA adjudication—such as failure to exercise a reasonable degree of care in supervising the children, Iowa Code § 232.96A(3)(b), and drug use that results in the children being imminently likely not to receive adequate care, *id.* § 232.96A(14), are established by clear and convincing evidence, substantive due process is not offended by the CINA disposition, *cf. id*. (rejecting substantive due process challenge where grounds for termination were met).

In our de novo review, we reach the same conclusion as the juvenile court. The State offered clear and convincing evidence that the children needed protection from both parents. The mother admitted using methamphetamine with the father in the past. The father lived in the home where the mother was using methamphetamine. And their youngest child, who the father reportedly cared for during the day, tested positive for methamphetamine and amphetamine. The father offered an array of evasive reasons for avoiding drug testing. It did not offend due process to require that the father participate in drug testing to "alleviate the concerns" that he was contributing to the risk faced by the children from methamphetamine use in their home.

## B. Drug Testing Order

Separate from his constitutional claim, the father argues that the juvenile court abused its discretion in affirming the CINA adjudication and continuing the children's removal because "the court never had any hard evidence of [his] drug usage." We find his argument meritless.

Iowa Code section 232.106 allows the court in CINA proceedings to impose conditions on a parent if the conditions assure the protection of the children. When parents are under the influence of substances, "their judgment and priorities may be adversely affected, and this may lead to violence as well as physical and emotional neglect." Nat'l Ass'n of Couns. for Child., Child Welfare Law and Practice: Representing Children, Parents, and State Agencies in Abuse, Neglect and Dependency Cases § 11.5.D.vi.a (Josh Gupta-Kagan, et al. eds. 4th ed. 2022). The condition of drug testing to show the father's abstention from drug use before placing the children in his care was no abuse of discretion on these facts.

**AFFIRMED.**